1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

| | |
|---|---|
| LUCIA VILLA, | Case No.  1:21-cv-00507-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | (ECF Nos. 12, 19, 24) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

19

**I.**

20

**INTRODUCTION**

21

Plaintiff Lucia Villa ("Plaintiff") seeks judicial review of a final decision of the

22

Commissioner of Social Security ("Commissioner" or "Defendant") denying her concurrently

23

submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social

24

Security Act.   The matter is currently before the Court on the parties' briefs, which were

25

submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]   For the reasons set

26

forth below, Plaintiff's appeal shall be denied.

27

28

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF Nos. 7, 10, 11.)

1

**II.**

**BACKGROUND**[2]

On May 15, 2019, Plaintiff concurrently filed applications for Social Security benefits under Title II and Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning September 1, 2017, due to carpal tunnel syndrome, arthritis in neck and back, degenerative disc disease of the cervical, thoracic, and lumbar spine, left knee problems, depression, sleepiness, and anxiety. (Admin. Rec. ("AR") 27, 33–34, 142, ECF No. 12-1.)

Plaintiff's claims were initially denied on August 26, 2019, and denied upon reconsideration on November 6, 2019. (AR 50–51, 61–64, 177, 190–92.) On September 2, 2020, Plaintiff appeared via telephonic conference, with a Spanish-speaking interpreter and represented by counsel,[3] for an administrative hearing before Administrative Law Judge Donna J. Grit (the "ALJ"). (AR 51–82.) Vocational expert ("VE") Richard Riedl also testified at the hearing. On September 18, 2020, the ALJ issued a decision denying benefits. (AR 21–50.) On August 26, 2020, Plaintiff requested reopening of a prior application. (AR 592–97.) The ALJ denied this request, finding that Plaintiff did not establish good cause existed to do so. (AR 28 (citing 20 C.F.R. §§ 404.988, 416.1488, SSR 91-5).) On September 25, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 7–14.)

Plaintiff initiated this action in federal court on March 25, 2021, and seeks judicial review of the denial of her application for benefits. (ECF No. 1.) The Commissioner lodged the administrative record on February 14, 2022. (ECF No. 12.) On June 1, 2022, Plaintiff filed an opening brief. (ECF No. 19.) On August 17, 2022, Defendant filed a brief in opposition. (ECF No. 24.) No reply brief was filed and the matter was deemed submitted.

///

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination. However, the Court will refer to the parties' briefings by their ECF pagination.

[3] Plaintiff's current attorney, Jonathan O. Pena, also represented her at the September 2, 2020 disability hearing. (See AR 54.)

1

## III.

2

## LEGAL STANDARD

3

### A.      The Disability Standard

4      To qualify for disability insurance benefits under the Social Security Act, a claimant must

5   show she is unable "to engage in any substantial gainful activity by reason of any medically

6   determinable physical or mental impairment[4] which can be expected to result in death or which

7   has lasted or can be expected to last for a continuous period of not less than 12 months."   42

8   U.S.C. § 423(d)(1)(A).   The Social Security Regulations set out a five-step sequential evaluation

9   process to be used in determining if a claimant is disabled.   20 C.F.R. § 404.1520;[5] Batson v.

10  Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).    The five steps in the

11  sequential evaluation in assessing whether the claimant is disabled are:

12
13
> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14
15
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

16
17
18
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

19
20
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

21
22
23
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

24

25
[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

26
27
28
[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

1    Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

2    on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A

3    claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

4    proof from step one through step four.

5         Before making the step four determination, the ALJ first must determine the claimant's

6    RFC.   20 C.F.R. § 416.920(e);  Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL

7    1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his]

8    limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§

9    404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments,

10   including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security

11   Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is

12   not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See

13   20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying

14   the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the

15   claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d

16   1044, 1049 (9th Cir. 2001).

17        At step five, the burden shifts to the Commissioner, who must then show that there are a

18   significant number of jobs in the national economy that the claimant can perform given her RFC,

19   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

20   1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines

21   ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114;

22   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation,

23   the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

24   for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035,

25   1039 (9th Cir. 1995)).

26   _____

27   [6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20
     C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they
     are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
28   1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1       **B.      Standard of Review**

2       Congress has provided that an individual may obtain judicial review of any final decision

3   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

4   determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

5   the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

6   Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

7   the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

8   405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

9   evidence which, considering the record as a whole, a reasonable person might accept as adequate

10  to support a conclusion."   Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

11  (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

12  Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

13  the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

14  not high."   Biestek, 139 S. Ct. at 1154.   Rather, "[s]ubstantial evidence means more than a

15  scintilla, but less than a preponderance; it is an extremely deferential standard."   Thomas v.

16  CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

17  citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

18  ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

19  454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

20  falls upon the party attacking the agency's determination."   Shinseki v. Sanders, 556 U.S. 396,

21  409 (2009).

22      Finally, "a reviewing court must consider the entire record as a whole and may not affirm

23  simply by isolating a specific quantum of supporting evidence."   Hill v. Astrue, 698 F.3d 1153,

24  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

25  Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

26  review only the reasons stated by the ALJ in her decision. Orn v. Astrue, 495 F.3d 625, 630 (9th

27  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

28  this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

1 || for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2 || the ALJ's conclusion that must be upheld." <u>Ford</u>, 950 F.3d at 1154 (quoting <u>Burch v. Barnhart</u>,

3 || 400 F.3d 676, 679 (9th Cir. 2005)).

**IV.**

**THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, September 18, 2020:

- Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2021.

- Plaintiff has not engaged in substantial gainful activity since September 1, 2017, the alleged onset date.  (20 C.F.R. §§ 404.1571 et seq.; 20 C.F.R. §§ 416.971 et seq.)

- Plaintiff has the following severe impairments: obesity; degenerative disc disease of the lumbar, thoracic, and cervical spine; degenerative changes of the sacroiliac joint; and bilateral carpal tunnel syndrome.  (20 C.F.R. §§ 404.1520(c), 416.920(c).)

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.)

- Plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), except she can never climb ladders, ropes, or scaffolds.  She can occasionally crawl and frequently climb ramps and stairs, stoop, kneel, and crouch.  She has no limits on balancing.  She can frequently handle and finger with the bilateral upper extremities.  She can perform no work at unprotected heights and only occasionally work with dangerous moving machinery.

- Plaintiff is unable to perform any past relevant work.  (20 C.F.R. §§ 404.1565, 416.965.)

- Plaintiff was born on April 2, 1967, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.  (20 C.F.R. §§ 404.1563, 416.963.)

6

1    • Plaintiff has at least a high school education. (20 C.F.R. §§ 404.1564, 416.964.)

2    • Transferability of job skills is not material to the determination of disability because using

3       the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not

4       disabled," whether or not Plaintiff has transferrable job skills. (SSR 82-41; 20 C.F.R. Part

5       404, Subpart P, Appendix 2.)

6    • Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist

7       in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§

8       404.1569, 404.1569(a), 416.969, 416.969(a)), such as:

9         ○ Housekeeping Cleaner (DOT 323.687-014), light work with an SVP of 2, about

10           400,000 jobs in national economy;

11         ○ Production Inspector (DOT 739.687-102), light work with an SVP of 2, about

12           128,000 jobs in national economy; and

13         ○ Production Assembler (DOT 723.684-018) light work with an SVP of 2, about

14           180,000 jobs in national economy.

15    • Plaintiff has not been under a disability, as defined in the Social Security Act, from

16       September 1, 2017, through the date of decision (September 18, 2020). (20 C.F.R. §§

17       404.1520(g), 416.920(g).)

18 (AR 30–43.)

19 **V.**

20 **DISCUSSION**

21      Plaintiff's briefing only identifies one issue on appeal: that the ALJ "failed to include

22 work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's

23 limitations and failed to offer clear and convincing reasons for rejecting Plaintiff's subjective

24 complaints" (ECF No. 19 at 10–16), which the Court construes as an argument that the ALJ erred

25 in discounting Plaintiff's subjective symptom testimony and, consequently, erred in the RFC

26 determination.[7]

---

27 [7] The Court notes the argument section of Plaintiff's brief, which seems fairly disorganized and therefore confusing
28 at times, appears to also include argument attacking the accuracy of the VE's testimony with respect to the number of
jobs available and whether those jobs require frequent fingering, as well as citations to U.S. Bureau of Labor

1

### A.    Plaintiff's Testimony

2      Plaintiff testified the biggest reason she stopped working was due to the pain in her hands.

3 (AR 62–63.)  She attempted to return to work once, after having a surgery, but then stopped

4 working again due to numbness in her hands 24 hours a day.  (Id.)  Another surgery has not been

5 recommended.  (Id.)  Plaintiff testified she continues to have swelling, pain, and numbness in

6 both hands, "all the time," "every day."  (AR 63–64.)  Plaintiff testified the pain level on an

7 average day is an eight or nine out of ten without medication, and seven out of ten with

8 medication.  (AR 64–65.)  As a result, Plaintiff testified she cannot open a water bottle, wash

9 dishes, or fold clothes, generally, "[things] where [Plaintiff] has to close [her] fingers and [her]

10 hands to be able to fold the items."  (AR 65.)

11

### B.    The RFC Determination

12      As previously noted, the ALJ found Plaintiff had the severe impairments of obesity;

13 degenerative disc disease of the lumbar, thoracic, and cervical spine; degenerative changes of the

14 sacroiliac joint; and bilateral carpal tunnel syndrome.   The ALJ considered Plaintiff's

15 impairments, her physical examination findings, electrodiagnostic test results, imaging study

16 results, longitudinal treatment history, the medial opinions of Drs. Bullard, Wong, Vu, Spellman,

17 and Serra, and the record as a whole (AR 40) to reach the RFC determination that Plaintiff can

18
19
20
21

> perform light work as defined in 20 CFR §§ 404.1567(b) and
> 416.967(b), except she can never climb ladders, ropes, or scaffolds.
> She can occasionally crawl and frequently climb ramps and stairs,
> stoop, kneel, and crouch.  She has no limits on balancing.  She can
> frequently handle and finger with the bilateral upper extremities.
> She can perform no work at unprotected heights and only

22 Statistics data.  These contentions are not presented under a separate argument heading, however, but are included in

23 Plaintiff's argument that the ALJ improperly discounted her testimony.  It is not entirely clear to this Court what argument Plaintiff seeks to advance with these statements.  However, such contentions may be construed as

24 additional support for Plaintiff's argument that the ALJ's error was not harmless.  Plaintiff, who is represented by counsel, may identify whatever issues she deems appropriate in her appeal of the Commissioner's decision.

25 However, the Court will not speculate as to arguments Plaintiff may or may not have intended to raise; rather, as previously noted, it will review only those issues raised by Plaintiff.  Lewis, 236 F.3d at 517 n.13.  Further, the Court

26 will only review "issues which are argued specifically and distinctly in a party's opening brief."  Indep. Towers of Wash. v. Wash. (Indep. Towers), 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that

27 were not actually argued in appellant's opening brief" and will only "review ... issues which are argued specifically and distinctly in a party's opening brief."); see also Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (quoting

28 U.S. v. Dunkel, 927 F.2d 955, 956 (9th Cir. 1991)) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim … As the Seventh Circuit in *Dunkel* stated aptly: '[j]udges are not like pigs, hunting for truffles buried in briefs.' ").

1    occasionally work with dangerous moving machinery.

2    (AR 33.)  Plaintiff only takes issue with the ALJ's findings as it relates to her allegations of carpal

3    tunnel.[8]

4    ### C.    The Parties' Primary Arguments

5    Plaintiff argues the ALJ only discounted her testimony because it was deemed

6    unsupported by objective medical evidence, which Plaintiff asserts is an improper basis to

7    discount symptom testimony; thus, the ALJ did not present clear and convincing reasons to

8    discount Plaintiff's testimony.  Plaintiff further argues the ALJ's reasoning for discounting her

9    testimony addresses only a purported inconsistency between Plaintiff's testimony that "her hands

10   remain continuously swollen," and medical examinations finding that Plaintiff's hands were not

11   swollen, among other things, but fails to address Plaintiff's other alleged symptoms.  Plaintiff also

12   argues the ALJ "cherry-picked" the record in support of her decision, such as referencing a

13   December 5, 2019 physical examination for its findings of no evidence of joint pain, tenderness,

14   or deformity, with full range of motion intact to all major joints, including normal bulk and tone,

15   even though this appointment was not a specialist appointment to treat Plaintiff's carpal tunnel

16   syndrome, but a primary care visit to treat an upper respiratory infection.  Finally, Plaintiff argues

17   the ALJ's error was harmful because, absent the discounting of Plaintiff's testimony, the ALJ

18   would have reached a different RFC determination, ultimately resulting in a disability finding.

19   In opposition, Defendant points to objective medical evidence as well as medical opinion

20   evidence in the record that the ALJ relied upon to discount Plaintiff's symptom testimony.  (ECF

21   No. 24 at 5–10.)  Defendant argues the ALJ discounted Plaintiff's testimony not only because it

22   was not supported by the objective medical evidence, but also "contradicted" by the medical

23   record.   Further, Defendant argues the ALJ's reference to examination notes, even where

24   Plaintiff's principal complaint was not her carpal tunnel impairment—such as findings that

25   _____

26   [8] While the ALJ discussed Plaintiff's other impairments—which allegedly negatively affected Plaintiff's ability to lift, reach, walk, sit, kneel, climb stairs, and use her hands—and similarly determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical

27   evidence and other evidence in the record (see AR 33–40), Plaintiff has not challenged the ALJ's findings and RFC determination as it relates to these other impairments.  Instead, Plaintiff's briefing only discusses the ALJ's findings with respect to Plaintiff's carpal tunnel syndrome; as such, this is the only issue to be addressed herein.  Lewis, 236

28   F.3d at 517 n.13; Indep. Towers, 350 F.3d at 929; Greenwood, 28 F.3d at 977.

1    Plaintiff was in "no acute distress" throughout the record—are nonetheless relevant to the ALJ's

2    evaluation of Plaintiff's allegations of "constant" symptoms occurring "every day" and constant

3    pain levels of 7–8/10 every day.  Finally, Defendant argues the ALJ properly evaluated Plaintiff's

4    complaints regarding her hands/wrist and carpal tunnel impairment, which resulted in the RFC

5    limitation of only frequent handling and fingering.

6          **D.      Legal Standard[9]**

7          The ALJ is responsible for determining credibility,[10] resolving conflicts in medical

8    testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of

9    pain or other symptoms are not conclusive evidence of a physical or mental impairment or

10   disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p, available at 2017 WL 5180304; see also Orn,

11   495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other

12   non-exertional impairment.").

13         Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony

14   regarding subjective symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir.

15   2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

16   medical evidence of an impairment that could reasonably be expected to produce some degree of

17   the symptom alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant

18   satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's

19   testimony about the severity of those symptoms only by providing specific, clear, and convincing

20   reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

21
22
23
24
> If an ALJ finds that a claimant's testimony relating to the intensity
> of his pain and other limitations is unreliable, the ALJ must make a
> credibility determination citing the reasons why the testimony is
> unpersuasive.  The ALJ must specifically identify what testimony is
> credible and what testimony undermines the claimant's complaints.
> In this regard, questions of credibility and resolutions of conflicts in

25   ---
26
[9]  Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 24 at 5 n. 4.)

27
28
[10] S.S.R. 16-3p, available at 2017 WL 5180304, applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

1      the testimony are functions solely of the Secretary.

2  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted);

3  see also Lambert, 980 F.3d at 1277.

4      Medical evidence is "a relevant factor in determining the severity of a claimant's

5  [symptoms]," but "an ALJ may not reject a claimant's subjective complaints based solely on a

6  lack of medical evidence to fully corroborate the alleged severity of [the symptoms]." Burch, 400

7  F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20

8  C.F.R. § 404.1529(c)(2)).  Thus, the ALJ must examine the record as a whole, including objective

9  medical evidence; the claimant's representations of the intensity, persistence and limiting effects

10  of his symptoms; statements and other information from medical providers and other third parties;

11  and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at

12  *5.

13      Additional factors an ALJ may consider include the location, duration, and frequency of

14  the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage,

15  effectiveness or side effects of any medication; other measures or treatment used for relief;

16  conflicts between the claimant's testimony and the claimant's conduct—such as daily activities,

17  work record, or an unexplained failure to pursue or follow treatment—as well as ordinary

18  techniques of credibility evaluation, such as the claimant's reputation for lying, internal

19  contradictions in the claimant's statements and testimony, and other testimony by the claimant

20  that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

21  Tommasetti v. Astrue, 533 F.3d 1035, 1039  (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

22  1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.

23      Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's

24  subjective complaint, the Court "will not engage in second-guessing." Thomas, 278 F.3d at 959.

25      **E.      Analysis**

26      In this case, there is no dispute that Plaintiff has a carpal tunnel impairment, and that

27  Plaintiff's impairments "could reasonably be expected to produce the claimant's pain or other

28  symptoms."  (AR 33.)  As a result, the ALJ was required to make a credibility finding as to

11

1   Plaintiff's own testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the

2   ALJ made no finding that Plaintiff was malingering, she was required to give clear and

3   convincing reasons as to why she did not find Plaintiff's subjective contentions about her

4   limitations to be persuasive.  Id.

5           1.      Allegations Not Substantiated by the Objective Medical Record

6           As an initial matter, the Court notes the ALJ has presented clear examples as to how

7   Plaintiff's subjective testimony is not substantiated by the objective medical evidence.

8   Specifically, the ALJ found:

9               Physical examination findings were somewhat inconsistent with the
                claimant's statements about the intensity, persistence, and limiting
10              effects of her symptoms.  For instance, the claimant testified that
                her hands remained continuously swollen (Testimony at 12:24:00).
11              However, on July 3, 2019, upon inspection of both wrists and
                hands, the claimant exhibited no erythema, swelling, symmetry,
12              atrophy, or deformity (Ex. 8F/75 and 77).  She had some tenderness
                to palpation over the generalized wrist joints but negative Tinel's
13              sign and negative Phalen's sign (Id. at 77).  She could make a fist,
                had no limitation in flexion or extension of all the fingers, and had
14              normal Jaymar measurements in both hands (Id.).  On December 5,
                2019, the claimant's physician's assistant documented that the
15              claimant presented with no evidence of joint pain, tenderness, or
                deformity but rather presented with full range of motion intact to all
16              major joints, including normal bulk and tone (Ex. 20F/19).  The
                claimant appeared to be in no acute distress throughout the medical
17              evidence of record (Ex. 2F/10, 5F/2, 7F/3, 8, 30, 8F/12, 59, 77, 82,
                86, 94, 99, 121, 134, 141, 147, 9F/51, and 20F/19).
18

19   (AR 36.)

20          Based on the foregoing, the Court finds that, as for the ALJ's reliance and analysis of the

21  objective medical evidence in weighing Plaintiff's testimony, such analysis is supported by

22  substantial evidence, and Plaintiff has not sufficiently demonstrated error in the ALJ's

23  conclusions regarding the objective medical evidence.  See Smolen, 80 F.3d at 1279 (substantial

24  evidence more than a scintilla, but less than a preponderance); Burch, 400 F.3d at 679 ("Where

25  evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

26  must be upheld.").

27          Moreover, it appears the ALJ's reliance and findings concerning the normal examination

28  findings and objective medical longitudinal record are detailed and supported by numerous

12

1    specific citations to the record.  (See AR 32–35.)  Thus, the Court finds Plaintiff's arguments that

2    the ALJ cherry picked or improperly relied upon this objective medial evidence is unavailing.

3    Indeed, the Court notes the ALJ's decision summarizes the longitudinal records and discusses

4    Plaintiff's complaints to her medical providers of pain with movement, tenderness to palpation,

5    and some positive Phalen's sign and Tinel's sign findings—the same symptoms emphasized by

6    Plaintiff in her briefing—demonstrating that the ALJ considered these medical records in

7    reaching her ultimate determination.  (See id.)   To the extent Plaintiff argues the ALJ's

8    conclusion based on her review of these records is incorrect (see, e.g., ECF No. 19 at 12, n.3, 4

9    (discussing importance of x-rays; citations to Mayo clinic and medical journals for definitions and

10   discussion of diagnostic tests for carpal tunnel syndrome)), it appears Plaintiff is presenting an

11   alternative interpretation of the evidence; however, this is not a basis to disturb the ALJ's rational

12   interpretation of the evidence.  Burch, 400 F.3d at 680–81 (citing Magallanes v. Bowen, 881 F.2d

13   747, 749 (9th Cir. 1989)) ("[w]e must uphold the ALJ's decision where the evidence is

14   susceptible to more than one rational interpretation."); Rollins, 261 F.3d at 853 ("It is true that

15   Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all

16   of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable

17   one.  But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is

18   not our role to second-guess it.").

19          2.     Contradiction with the Medical Record

20          The critical issue is whether the ALJ provided a clear and convincing reason or reasons to

21   reject Plaintiff's testimony apart from the finding that Plaintiff's allegations are not corroborated

22   by the objective medical evidence.  That is, while a lack of objective medical evidence is a proper

23   factor the ALJ may consider in weighing a claimant's testimony, it cannot form the *sole* basis

24   presented by the ALJ for rejecting pain testimony.  See Vertigan, 260 F.3d at 1049 ("The fact that

25   a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself,

26   is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e

27   will not reject your statements about the intensity and persistence of your pain or other symptoms

28   or about the effect your symptoms have on your ability to work solely because the available

13

1    objective medical evidence does not substantiate your statements."). Rather, where a claimant's

2    symptom testimony is not fully substantiated by the objective medical record, the ALJ must

3    provide an additional reason for discounting the testimony. See Burch, 400 F.3d at 680–81

4    ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it

5    is a factor that the ALJ can consider in his credibility analysis ... Contrary to Burch's argument,

6    the ALJ did not solely rely on the minimal objective evidence and Burch's daily activities in

7    discrediting her testimony. Indeed, these factors were among those he relied on, however, the

8    ALJ made additional specific findings to support his credibility determination.").

9          This appears to be the main focus of Plaintiff's argument: that the ALJ solely relied on the

10    objective medical evidence to reject Plaintiff's subjective testimony. The Court notes Defendant

11    mainly highlights the manner in which Plaintiff's allegations may not be substantiated by the

12    medical record. However, Defendant also appears to argue the ALJ rejected Plaintiff's testimony

13    on the basis that it is "inconsistent with" the medical record; more specifically, Plaintiff's

14    subjective testimony is contradicted by the medical opinions. (ECF No. 24 at 8.)

15          As noted, conflicts between the claimant's testimony and the record—including the

16    claimant's conduct, activities, failure to pursue treatment, "internal contradictions," and "ordinary

17    techniques of credibility evaluation"—support an ALJ's adverse credibility determination.

18    Ghanim, 763 F.3d at 1163; Tommasetti, 533 F.3d at 1039 ; Lingenfelter, 504 F.3d at 1040;

19    Smolen, 80 F.3d at 1284; see also Robbins, 466 F.3d at 884 (ALJ may find a claimant not

20    credible based on "reasons related to the subjective testimony (e.g., reputation for dishonesty), on

21    conflicts between his testimony and his own conduct, or on internal contradictions in that

22    testimony.").

23          In this vein, the Ninth Circuit has provided that contradiction between the claimant's

24    testimony and the relevant medical evidence is a sufficient basis for an adverse credibility

25    finding. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) ("The ALJ … identified several

26    contradictions between claimant's testimony and the relevant medical evidence and cited several

27    instances of contradictions within the claimant's own testimony. We will not reverse credibility

28    determinations of an ALJ based on contradictory or ambiguous evidence."); Carmickle v.

1    Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination

2    claimant's testimony was "not entirely credible" based on contradictions with medical opinion);

3    Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle with approval)

4    ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's

5    subjective testimony."); see also Woods v. Comm'r of Soc. Sec., No. 1:20-cv-01110-SAB, 2022

6    WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence

7    may not be the sole basis for rejection of symptom testimony, inconsistency with the medical

8    evidence or medical opinions can be sufficient.") (emphasis in original) (citing e.g., Stobie v.

9    Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate

10   clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical

11   evidence to establish disability during the insured period and (2) symptom testimony conflicted

12   with the objective medical evidence)).

13        The Ninth Circuit's analysis in Carmickle is most instructive here.  In Carmickle, the ALJ

14   rejected the claimant's testimony as to four specific allegations, including the allegation that he

15   could only lift ten pounds occasionally.[11]   Carmickle, 533 F.3d at 1160.  The ALJ rejected this

16   allegation in favor of a physician's contradictory opinion that the claimant could lift up to ten

17   pounds *frequently* (and twenty pounds occasionally).   Id. at 1161.   Notably, the claimant's

18   contradiction with the medical opinion was the only reason the ALJ rejected this allegation as

19   "not entirely credible."   See id. at 1160–61.   In applying the clear and convincing standard, the

20   Ninth Circuit affirmed the ALJ's adverse credibility determination relating to this limitation on

21   the basis that "[c]ontradiction with the medical record is a sufficient basis for rejecting the

22   claimant's subjective testimony."   Id. at 1161.

23

24   [11] Carmickle demonstrates that an ALJ may reject one or several specific allegations (as concerning pain, symptoms, limitations, etc.) to reach an adverse credibility determination.  This cuts against Plaintiff's argument that the ALJ

25   erred in discounting her testimony because the ALJ focused on Plaintiff's allegations of pain and swollen hands, but did not directly address all of Plaintiff's other symptom allegations.  Indeed, the Court notes Plaintiff identifies no legal authority indicating that an ALJ is required to establish every single one of a Plaintiff's symptom allegations is

26   contradicted by the record in order to reach an adverse credibility determination.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need not be extensive."); Drummer v.

27   Kijakazi, No. 21-35710, 2022 WL 2953703, at *1 n.3 (9th Cir. Jul. 26, 2022) (citing Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ does not need to discuss every piece of [medical] evidence.") (internal

28   quotations omitted))).

1    Similarly here, the ALJ noted Plaintiff's allegation that her impairment negatively

2  affected her ability to use her hands.  (AR 33–34.)  At the disability hearing, the ALJ questioned

3  Plaintiff about her ability to use her hands, to which Plaintiff testified she cannot open a water

4  bottle, wash dishes, or fold clothes, generally, she cannot use her hands to do "[things] where

5  [she] has to close [her] fingers and [her] hands to be able to fold the items."  (AR 65.)

6  Consequently, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting

7  effects of her symptoms were inconsistent with the medical record.  In reaching this

8  determination, the ALJ evaluated the medical opinions of Drs. Bullard, Wong, Vu, Spellman,

9  Stafford, and Serra, and found their opinions persuasive in that they all opined Plaintiff was

10  limited to frequent handling and fingering.  Notably, Plaintiff has not contested the ALJ's

11  evaluation of the medical opinion evidence.

12    The ALJ further explained the opinions were persuasive with respect to limiting Plaintiff

13  to frequent handling and fingering because they were consistent with the objective medical

14  evidence.  (AR 38–40.)  Specifically in her decision, the ALJ noted an example of objective

15  medical evidence "consistent" with the doctors' opinions was the electrodiagnostic testing

16  showing Plaintiff dealt with "mild to moderate" bilateral carpal tunnel syndrome.  This echoes

17  Dr. Bullard's opinion which, for example, is expressly based on the determination that Plaintiff's

18  bilateral hand symptoms "do not appear to be very severe and are not limiting in adls [activities of

19  daily living]."  (AR 93); see also Valentine, 574 F.3d at 693 (ADLs that may not be insufficient to

20  establish non-disability may nonetheless "be grounds for discrediting the claimant's testimony to

21  the extent that they contradict claims of a totally debilitating impairment.").  Thus, the Court finds

22  the ALJ rejected Plaintiff's allegation of being totally disabled due to not being able to use her

23  hand, such as to do things where she has to close her fingers and her hands, in favor of the

24  opinions of Drs. Bullard, Wong, Vu, Spellman, Stafford, and Serra that Plaintiff was limited to

25  frequent handling and fingering.  Carmickle, 533 F.3d at 1160–61.

26    In addition, the Court notes the ALJ found that, "[g]iven [Plaintiff's] allegations of totally

27  disabling symptoms, one might expect to see some indication in the treatment records of such

28  restrictions placed on [Plaintiff] by her treating medical professionals.  Yet a review of the record

1    reveals no such restrictions recommended by the treating medical professions." (AR 35.)  This

2    also indicates a contradiction between Plaintiff's testimony and the medical record which

3    supports the ALJ's adverse credibility determination.  See Valentine, 574 F.3d at 693.

4           Similarly, Defendant's argument supporting the ALJ's review of the longitudinal records

5    showing "no acute distress"—regardless of the purpose of the medical visit—is well-taken.  In

6    short, Plaintiff testified that her pain levels were at an 8/10 or 9/10 without medication and 7/10

7    with medication, on a "constant" and "everyday" basis.  (AR 64–65.)  Based on the consistency

8    and severity of Plaintiff's reported symptoms, it was therefore reasonable for the ALJ to expect

9    Plaintiff would present in at least some distress on examination, and to consider whether any

10   medical records documented Plaintiff being in acute distress at any time.  Hence, the ALJ's

11   finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her

12   symptoms were inconsistent with the medical evidence of record showing Plaintiff never

13   appeared to be in acute distress was a rational interpretation of the evidence.  See Sherman v.

14   Colvin, 582 Fed. App'x 745, 748 (9th Cir. 2014) (finding ALJ "reasonably concluded

15   [claimant's] medical conditions did not limit his daily activities to the extent that he claimed

16   [because] [n]o doctor placed any restrictions on [his] activities.")  This is also consistent with the

17   ALJ's rejection of Plaintiff's allegations of "totally disabling symptoms" where none of

18   Plaintiff's treating physicians placed any restrictions on Plaintiff due to such alleged symptoms.

19   See, e.g., Valentine, 574 F.3d at 693.

20          Based on the foregoing, the Court finds the ALJ has presented two clear and convincing

21   reasons for rejecting symptom testimony that are supported by substantial evidence in the record:

22   (1) Plaintiff's testimony is not corroborated by the objective medical evidence and (2) Plaintiff's

23   symptom testimony conflicts with the objective medical evidence.  Stobie, 690 Fed. App'x at 911

24   (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting

25   symptom testimony: (1) insufficient objective medical evidence to establish disability during the

26   insured period and (2) symptom testimony conflicted with the objective medical evidence)).

27          3.      Accounting for Plaintiff's Limitations in the RFC Determination

28          Relatedly (and included in Plaintiff's sole argument identified in the briefing), Plaintiff

17

1  argues the ALJ failed to account for specific evidence in the record—particularly her subjective

2  testimonial evidence—that supports Plaintiff's limitations.  As to this argument, the Court finds

3  Plaintiff is merely rehashing her prior arguments that the ALJ improperly discounted her

4  testimony.  Thus, Plaintiff's argument on this basis fails.  See Stubbs-Danielson v. Astrue, 539

5  F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates"

6  arguments about medical evidence and testimony); Hairston, 827 Fed. App'x at 773 (summarily

7  rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial

8  evidence as "derivative of her preceding arguments addresses and rejected above."); see also

9  Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that

10  testimony for which the ALJ has provided specific and legitimate reasons to discount be included

11  in the hypothetical given the VE).

12         In sum, the Court concludes the ALJ identified clear and convincing reasons based on

13  substantial evidence for discounting Plaintiff's symptom testimony.  Plaintiff's challenge to the

14  RFC, which is based solely on the argument that the ALJ failed to include limitations indicated in

15  Plaintiff's testimony therefore also fails.  See Stubbs-Danielson, 539 F.3d at 1175–76; Embrey,

16  849 F.2d at 423.  Further, this Court must defer to the decision of the ALJ where evidence exists

17  to support more than one rational interpretation.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th

18  Cir. 1992); Burch, 400 F.3d at 679.  "As [the Court] cannot say that the ALJ's interpretation of

19  the available evidence was not rational, the ALJ's conclusions were supported by substantial

20  evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the Court will

21  not disturb the ALJ's decision with respect to her evaluation of the symptom testimony and RFC

22  determination.

23                                              **VI.**

24                               **CONCLUSION AND ORDER**

25      For the foregoing reasons, IT IS HEREBY ORDERED that:

26      1.     Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

27             No. 19) is DENIED; and

28      2.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant

1    Commissioner of Social Security and against Plaintiff Lucia Villa and close this

2    case.

3

4  IT IS SO ORDERED.

5  Dated:    **October 7, 2022**

   UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28